UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAYMOND FURTADO | : | |
| | : | |
| v. | : | C.A. No. 07-387ML |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on October 15, 2007 seeking to reverse the decision of the Commissioner. On March 28, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 8). On April 25, 2008, Defendant filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED

and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 15, 2004, alleging disability as of September 14, 2004. (Tr. 44). The application was denied initially (Tr. 27, 29-31) and on reconsideration. (Tr. 28, 36-38). Plaintiff filed a request for an administrative hearing. (Tr. 39). A hearing was held on May 4, 2007 before Administrative Law Judge Martha Bower (the "ALJ") at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified. (Tr. 369-392).

On May 15, 2007, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 10-22). Plaintiff appealed to the Appeals Council by filing a request for review on May 17, 2007. (Tr. 9, 360). The Appeals Council denied Plaintiff's request for review on August 31, 2007. (Tr. 5-8). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's mental RFC findings are not supported by substantial evidence. In addition, Plaintiff contends that the ALJ and Appeals Council erred by failing to consider his "borderline" age category.

The Commissioner disputes Plaintiff's claims and asserts that there is substantial evidence in the record that supports the ALJ's RFC assessment and non-disability finding.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was fifty-four years old at the time of the ALJ hearing, (Tr. 44), has an eighth-grade education (Tr. 71) and previous work experience as a shell fisherman. (Tr. 68). Plaintiff alleges disability due to a heart condition and depression. (Tr. 67-70).

In his September 19, 2004 Physician Examination Report to the Rhode Island Department of Human Services, Dr. Robert Meringolo indicated that Plaintiff had no limitations in his abilities to remember and carry out simple instructions, maintain attention and concentration, make simple work-related decisions and interact appropriately with co-workers and supervisors. (Tr. 118). Dr. Meringolo further assessed a moderate limitation in the area of working at a consistent pace without extraordinary supervision and a slight limitation in responding appropriately to changes in work routine or environment. Id.

On October 29, 2004, Dr. Meringolo indicated that Plaintiff should not return to commercial diving or fishing due to his cardiac condition. (Tr. 121). He re-evaluated Plaintiff that day, noting that Plaintiff had "been walking one mile a day without problems." (Tr. 122). Dr. Meringolo

strongly advised Plaintiff to cease smoking. (Tr. 123). When Plaintiff returned to Dr. Meringolo on December 17, 2004, he reported extreme fatigue. (Tr. 124). Plaintiff had stopped taking his Wellbutrin, which Dr. Meringolo prescribed in October to help him stop smoking. (Tr. 115, 124). Plaintiff was still smoking four cigarettes daily. (Tr. 124). He remained inactive so he would not become short of breath. Id. He appeared "quite depressed." Id. Dr. Meringolo's impression was of multi-factorial fatigue, likely due to depression and low blood pressure. Id.

When Plaintiff returned to Dr. Meringolo on January 28, 2005, he reported that he was still smoking five or six cigarettes a day. (Tr. 131). He indicated that he was still fatigued, and was not very active. Id. Dr. Meringolo stated that Plaintiff was "extremely fatigued from unknown reasons, although I do think he is very depressed." Id. Dr. Meringolo again advised Plaintiff to be more physically active, to try walking on a regular basis and to stop smoking. Id. He again indicated that Plaintiff could not return to work as a commercial fisherman and diver. (Tr. 132).

State Disability Determination Services ("DDS") referred Plaintiff for a consultative psychological evaluation by Psychologist Louis Turchetta and Psychometrist Steven W. Rotondo on March 28, 2005. (Tr. 144-148). Plaintiff was easily engaged in the testing process and appeared to enjoy the challenge. (Tr. 144). He did not appear particularly distractible, and his task persistence and ability to follow directions were adequate. Id. Plaintiff was administered a battery of tests, including the Wenschler Adult Intelligence Scale, the Wide Range Achievement Test and a mental status examination. Id. Plaintiff reported having suffered two heart attacks, the most recent in September, 2004. (Tr. 145). He stated that the resulting change in his lifestyle caused him to become depressed. Id. He indicated that his activities included half-mile daily walks. Id. Plaintiff achieved Verbal, Performance and Full Scale IQ scores consistent with borderline-range cognitive

functioning. (Tr. 146). His reading skills tested at the fifth-grade level, his spelling at the second-grade level, and his arithmetic at the third-grade level. Id. His thought process was concrete and he verbalized adequately with no difficulties in articulation. Id. He was oriented to time, place and person; his immediate and long-term recall were below average. Id. His comprehension and judgment were in line with his level of cognition. (Tr. 146-147). Dr. Turchetta diagnosed mood disorder due to medical condition, with depressive features and borderline intellectual functioning. (Tr. 147). Plaintiff's Global Assessment of Functioning ("GAF") score was rated at 50.

Dr. Meringolo noted on April 15, 2005 that Plaintiff was still smoking "a few cigarettes a day." (Tr. 134). Plaintiff was walking one mile about twice a week, but was still "extremely tired and unable to perform his usual daily activities." Id. Dr. Meringolo noted that Plaintiff's primary complaint was fatigue, that he snored and that a sleep apnea study should be performed. Id. He did not believe Plaintiff should work until Plaintiff's fatigue was worked up. (Tr. 134, 135).

Dr. Meringolo wrote Plaintiff's attorney on May 27, 2005 in which he stated that Plaintiff was "somewhat limited." (Tr. 136). While he believed that Plaintiff "certainly" could not return to his prior work as a commercial fisherman, he did not know the source of Plaintiff's fatigue, stating that "it may be due to a side-effect from some of his medications." Id.

Also on May 27, 2005, Dr. Meringolo completed several questionnaires concerning Plaintiff's symptoms, capacities and functional limitations. In a Pain Questionnaire, he indicated that Plaintiff was not suffering from significant pain. (Tr. 168). In a Fatigue Questionnaire, Dr. Meringolo stated that Plaintiff suffered from significant fatigue, that it was medically reasonable that Plaintiff would need to lie down on a daily basis due to fatigue, that his ability to concentrate was not substantially impaired, and that Plaintiff could not perform full-time work on an ongoing basis. (Tr. 169). He

also completed a Medical Questionnaire, in which he rated Plaintiff's fatigue as moderate and again indicated that Plaintiff could not work full-time. (Tr. 171). He indicated in a Supplemental Questionnaire as to RFC that Plaintiff had moderately severe limitations in understanding, carrying out, and remembering instructions; responding to customary work pressures; and performing complex tasks. (Tr. 173-174). Dr. Meringolo further suggested moderate limitations in the ability to respond appropriately to supervision and co-workers and a moderate restriction of daily activities. (Tr. 173). Finally, in a Physical Capacity Evaluation form, Dr. Meringolo indicated that Plaintiff could sit for three hours and stand or walk for two hours each out of an eight-hour workday, and that he could sit and/or stand in combination for three hours before needing to lie down. (Tr. 175). He stated that Plaintiff could lift or carry up to ten pounds frequently and eleven to twenty pounds occasionally. Id. He believed Plaintiff could not use his extremities for pushing and pulling; could occasionally bend but never squat, kneel or crawl and had environmental limitations as well. Id.

On July 15, 2005, Plaintiff reported to Dr. Meringolo that he was trying to "walk one mile, two or three times a week and is limited more by fatigue than chest pain or shortness of breath." (Tr. 194). Dr. Meringolo thought that Plaintiff had "stable coronary disease and reasonably well controlled labile hypertension." Id. He again urged Plaintiff to stop smoking, exercise more and try to lose weight. Id.

Dr. Meringolo submitted a second Physician Examination Report on October 11, 2005. (Tr. 187-190). He assessed Plaintiff with limitations to walking two hours, sitting four hours, standing two hours, and reaching two hours out of an eight-hour work day, with the ability to stand and sit intermittently for three hours. (Tr. 189). He indicated that Plaintiff was markedly limited in responding appropriately to workplace changes, moderately limited in making simple work-related

decisions and working at a consistent pace without extraordinary supervision, and slightly limited in maintaining attention and concentration and interacting appropriately with co-workers and supervisors. Id.

Dr. Meringolo re-evaluated Plaintiff on February 7, 2006, noting that Plaintiff was still smoking. (Tr. 195). Plaintiff was walking one mile, several days a week, becoming diaphoretic (excessively sweaty) at the end of his walk. Id. Dr. Meringolo's opinion was still of stable coronary disease and reasonably well-controlled hypertension. Id.

When Plaintiff returned to Dr. Meringolo on September 28, 2006, he reported that he was doing no formal exercise because he became diaphoretic as soon as he started an activity. (Tr. 197). Plaintiff was still smoking half a pack of cigarettes a day. Id. Dr. Meringolo was not sure why Plaintiff was experiencing diaphoresis at the beginning of an activity. Id. Plaintiff's coronary disease was still stable and his blood pressure was under good control. Id.

On November 2, 2006, Dr. Meringolo wrote that he did not feel Plaintiff could work given his symptoms of coronary artery disease, hypertension, elevated cholesterol and tobacco abuse. (Tr. 198). On December 8, 2006 Dr. Meringolo completed a second Supplemental Questionnaire as to Residual Functional Capacity ("RFC"), indicating that Plaintiff had moderately severe limitations in relating to other people; understanding, carrying out, and remembering instructions; responding to customary work pressures; and performing complex tasks. (Tr. 199-200). He further indicated that Plaintiff had moderate limitations in responding appropriately to supervision and co-workers, with moderate restriction of daily activities and moderate constriction of interests. (Tr. 199). Dr. Meringolo also completed a second Medical Questionnaire on that date, indicating that Plaintiff's

fatigue and diaphoresis were of moderate severity and that Plaintiff could not work full-time on an ongoing basis. (Tr. 201-202).

Plaintiff returned to Dr. Meringolo on March 20, 2007 reporting continued very poor exercise tolerance and that he became diaphoretic and tired with exertion. (Tr. 346). Plaintiff was smoking one pack of cigarettes a day, and stated that he could not exercise because of his poor tolerance. Id. Dr. Meringolo stated that Plaintiff "has a lack of ambition and is clearly depressed." Id. Dr. Meringolo still felt that Plaintiff's coronary disease was stable and that his blood pressure was under good control. Id.

**A. The ALJ Failed to Adequately Consider Plaintiff's Borderline Age Category**

Plaintiff was born on October 29, 1952 and was fifty-four years, six and one-half months old on the date the ALJ rendered her decision. This is an SSI case and thus the issue before the ALJ was disability status from the application date (November 15, 2004) through the date of her decision (May 15, 2007).

The ALJ decided this case adverse to Plaintiff at Step 5. The ALJ determined that Plaintiff could perform a limited range of work at the light exertional level but was unable to perform his past occupation as a shell fisherman. (Tr. 16, 21). If Plaintiff was able to perform a full range of light work, the ALJ noted that a finding of "not disabled" would be dictated by the grids (i.e., the Medical-Vocational Guidelines). (Tr. 21). However, because the ALJ assessed additional restrictions in her RFC finding, the ALJ solicited testimony from a VE to make the Step 5 finding.

In applying the grids, the ALJ determined that Plaintiff was an individual "closely approaching advanced age" (age fifty to fifty-four) as defined in 20 C.F.R. § 416.963(d). Plaintiff was fifty-one years old when he applied for disability benefits. However, he was within six months

of his fifty-fifth birthday at the time of both the ALJ hearing and decision. The regulations contain "special rules" for persons of "advanced age" (age fifty-five or older) as such age "substantially affects a person's ability to adjust to other work." 20 C.F.R. § 416.963(e).

The ALJ mechanically applied the age rule to Plaintiff's case and only considered Plaintiff as falling in the "closely approaching advanced age" category. However, the applicable regulations provide that "[w]e will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." Id. § 416.963(b). (emphasis added). Here, if the ALJ had applied the advanced-age category, a disability finding would have resulted. Compare Grid Rule 202.02 with Grid Rule 202.11.

"For SSI purposes, entitlement to borderline-age consideration is measured as of the date of the [ALJ's] decision." Swan v. Barnhart, No. 03-120-B-W, 2004 WL 1529270 at *9 n.12 (D. Me. April 30, 2004) (citing Crady v. Sec'y of Health & Human Servs., 835 F.2d 617, 620 (6th Cir. 1987)). Although the First Circuit has not weighed in, "the general consensus is that 'the borderline range falls somewhere around six months from the older age category.'" Id. at *9 (quoting Pickard v. Comm. of Social Security, 224 F. Supp. 2d 1161, 1168-1169 (W.D. Tenn. 2002)).

Applying this "general consensus," Plaintiff fell within the borderline-age range since he was less than six months from his fifty-fifth birthday when the ALJ ruled and thus he was entitled to borderline-age consideration. See Levesque v. Barnhart, No. 01-189-B, 2002 WL 1585527 at *1 n.1 (D. Me. July 17, 2002) (In the context of an EAJA fee request, the Court described ALJ's failure to consider the borderline-age issue as "indefensible" where the ALJ hearing was conducted

approximately two months prior to claimant's fiftieth birthday.). Here, the ALJ never addressed the borderline-age issue in her decision or at the hearing. Thus, it is impossible to ascertain from the record if the ALJ applied 20 C.F.R. § 416.963(b) to Plaintiff's case. See Graham v. Massanari, No. 00C4669, 2001 WL 527326 at *8 (N.D. Ill. May 9, 2001) ("the borderline regulation places the burden on the Commissioner to determine what age category should be applied"); and Pickard, 224 F. Supp. 2d at 1169 ("the ALJ should have considered whether [the claimant's] proximity to the next higher age category placed her in a borderline situation and, based on whatever evidence was available, which category best described her").[1]

In his brief, Defendant faults Plaintiff's counsel for failing to raise the borderline-age issue before the ALJ and the Appeals Council. (Document No. 9 at p. 21 n.4). He anticipates a potential EAJA fee request and contends that "even if this Court...remand[s] for application of the borderline age regulation to Plaintiff...an award of attorney's fees to Plaintiff's counsel with respect to time briefing this issue would be inappropriate." Id. Defendant, however, provides no support for the proposition that the burden is on Plaintiff to raise the borderline-age issue.[2] In fact, the applicable regulation affirmatively provides that, in borderline-age cases, "we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 416.963(b). While raising the issue would have allowed for a more developed record and efficient review, the regulation does not provide that a claimant must request such consideration before the

[1] In Daniels v. Apfel, 154 F.3d 1129, 1134 n.5 (10th Cir. 1998), the ALJ failed to apply the borderline-age analysis to a claimant who was sixty-five days short of his fifty-fifth birthday at the relevant time. The Court of Appeals found error and reasoned as follows: "Determining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding. Even were this considered a discretionary matter, the ALJ would have abused that discretion by failing to exercise it." Id. (citations omitted).

[2] The issue of EAJA fees is not presently before the Court, and no finding is made as to such fees or the relevance under EAJA of Plaintiff's counsel's failure to specifically raise the borderline-age issue to the ALJ.

ALJ. Thus, the matter must be remanded to the ALJ for consideration of the borderline-age issue and a finding as to the appropriate age category to be applied to this case.

**B. The ALJ Failed to Adequately Review the Medical Evidence**

Plaintiff raises a number of alternative arguments regarding the lack of support for the ALJ's RFC assessment. Given the decision to remand on the borderline-age issue, a full consideration of Plaintiff's alternative arguments is not necessary. However, I will comment briefly on two issues that are also supportive of remand.

First, Plaintiff argues that the ALJ erred by ignoring the psychiatric evaluation performed by Dr. Sullivan. (Tr. 353-359). Plaintiff's counsel referred Plaintiff to Dr. Sullivan for evaluation and submitted the evaluation to the ALJ before she issued her decision. (Tr. 361). Dr. Sullivan diagnosed a major depressive disorder and opined that Plaintiff was "totally disabled." (Tr. 356-357). The ALJ fails to mention Dr. Sullivan's report in her decision, and it is unclear if she considered it, and, if so, what weight she gave it. Defendant "concedes that the ALJ should have expressly discussed Dr. Sullivan's opinion, if only to explain why it was not entitled to significant weight in formulating Plaintiff's RFC." (Document No. 9 at pp. 17-18). Defendant then undertakes his own evaluation of Dr. Sullivan's opinion and concludes that "the ALJ's implicit rejection of Dr. Sullivan's opinion is appropriate." Id. at p. 18. (emphasis added). It is the province of the ALJ to evaluate medical evidence and to resolve evidentiary conflicts. 20 C.F.R. § 416.927. It is not the function of this Court to evaluate such evidence in the first instance and to make "implicit" conclusions about the ALJ's unstated findings. It is the Court's function to review the ALJ's explicit findings and determine if they are legally correct and supported by substantial evidence. While the failure to comment on a single piece of medical evidence generally does not automatically

require remand, the failure to discuss Dr. Sullivan's report provides an additional reason for remand when coupled with the ALJ's additional failure to address the borderline-age issue.

Finally, Plaintiff contends that the ALJ improperly came to her own medical conclusions about the cause of Plaintiff's fatigue. In particular, the ALJ stated that she "does not find the record supports [Plaintiff's] alleged fatigue and diaphoresis is the result of a physical or mental limitation but rather deconditioning." (Tr. 20).[3] The ALJ cites no medical support for this conclusion which Defendant describes as a common sense determination. Plaintiff had a steady work history including a lengthy period as a shell fisherman. (Tr. 372). In 2004, Plaintiff suffered a heart attack and could not return to shell fishing. He alleges that the loss of his career led to depression and that he suffers from fatigue. While the record suggests that Plaintiff has not been active since his heart attack and has consistently reported fatigue, Plaintiff's treating physician, Dr. Meringolo, concluded that Plaintiff's fatigue was "multifactorial" and "probably from depression and low blood pressure." (Tr. 124). Dr. Turchetta, a consultative psychologist, diagnosed a mood disorder due to medical condition with depressive features (Tr. 147) and the ME, Dr. Gaeta, testified that Plaintiff has "particularly severe depression" (Tr. 378) and that depression can contribute to a sense of fatigue and lack of energy. (Tr. 387). Further, Dr. Meringolo speculated that Plaintiff's fatigue may be a side-effect of a cardiac medication. (Tr. 136). There is no medical support in the record for the ALJ's conclusion that Plaintiff's fatigue is due solely to "deconditioning" and thus it is unsupported by the record. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person...the ALJ was simply not qualified to interpret new medical data in functional terms, and no medical opinion supported the determination.").

[3] Although the ALJ does not define the term "deconditioning," the Court assumes that she means that Plaintiff's lack of activity resulted in him becoming "out of shape."

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 6) be GRANTED. Final judgment shall enter in favor of Plaintiff remanding this case for further administrative proceedings consistent with this Decision.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 25, 2008